**56**

STATE ex inf. John C. DANFORTH, Attorney General of Missouri, Appellant,

v.

Thomas A. DAVID et al., Respondents.

No. 58575.

Supreme Court of Missouri,
Division No. 1.

Dec. 16, 1974.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for appellant, State of Missouri.

Veryl L. Riddle, Thomas C. Walsh, St. Louis, for respondents Thomas A. David, Civic Plaza National Bank, Swope Parkway National Bank, and Western Surety Co.; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

Guy G. Rice, Phillips, Rice & McElligott, Independence, for respondent, Sugar Creek National Bank.

WELBORN, Commissioner.

Action by state "on the information" of the Attorney General against the former Director of Revenue of the State of Missouri, his corporate surety and three national banks to obtain reimbursement for the benefit of the state for interest on the state's share of the proceeds of various taxes, alleged to have been wrongfully deposited by the director in demand deposits in such banks. Trial court sustained defendants' motion to dismiss. State appealed.

Article X, § 4(c), Constitution of Missouri, V.A.M.S., provides that all taxes on intangible personal property "shall be assessed, levied and collected by the state and returned as provided by law, less two per cent for collection, to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy."

Pursuant to this provision the intangible personal property tax law, in effect during the time here involved, included § 146.110, RSMo 1969, V.A.M.S., which provided in part:

"The director of revenue shall annually, on or before the fifteenth day of September, return the amount of intangible taxes collected, less two percent thereof, which shall be retained by the state for collection, to the county treasury of the county in which the particular taxpayers are dom-

iciled or in which the intangible personal property which was the subject of the tax had its business situs."

A similar provision was found in the "Bank Tax Law of 1946" (§§ 148.010–148.-110, RSMo 1969, V.A.M.S.), except that the time for distribution was "on or before December first of each year." § 148.080. The "Credit Institutions Tax Law of 1946" (§§ 148.120–148.230, RSMo 1969, V.A.M.S.) contained a similar provision. § 148.220.

Relying on § 15 of Article IV, Constitution of Missouri 1945, requiring that "[a]ll revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury, and all interest, income and returns therefrom shall belong to the state" and § 33.080, RSMo 1969, V.A.M.S., requiring that all moneys received by any official of the state "shall, by the official authorized to receive same, and at stated intervals of not more than thirty days, be placed in the state treasury to the credit of the particular purpose or fund for which collected * * *", the petition in this case charged that, from January 11, 1965 to July 1, 1969, David as Director of Revenue failed to deliver to the state treasurer "promptly" and "at stated intervals of not more than thirty days", the two percent of the proceeds of the above taxes allowed to the state for their collection. The petition charged that David breached his duty to remit monthly the state's portion of the taxes by depositing such funds in noninterest bearing demand deposits in the Civic Plaza National Bank of Kansas City, the Swope Parkway National Bank and the Sugar Creek National Bank. The petition charged that the banks used such funds to earn interest for their own accounts, contrary to § 15 of Article IV, above quoted. The petition alleged that the banks knew or should have known that the interest received by them from such funds properly was revenue of the State of Missouri.

The petition sought an accounting from the banks of the interest on such funds for the period in question and sought judgment against such banks, David and his surety for the amounts retained by the banks.

Count II of the petition alleged that David deliberately sought to divert to the banks the interest due the State of Missouri and that the banks adopted such purpose. Punitive damages against David and the banks for twice the amount found due the state were sought.

Sugar Creek National Bank filed a separate motion to dismiss the petition against it. The other banks, David and his surety filed a joint motion to dismiss as to them. Both motions alleged a failure to state a claim. The motion of David, et al., set up the three-year statute of limitations (§ 516.130, RSMo 1969, V.A.M.S.). The trial court entered an order sustaining the motion to dismiss as to the banks for failure to state a claim on which relief may be granted. It sustained the motion as to David and his surety on the grounds of the bar of the three-year statute of limitations (§ 516.130).

For purpose of this appeal, the dispositive question is whether or not the director of revenue was required to make monthly deposits in the state treasury of the state's share of the taxes in question or whether, as contended by David, he was required to remit the state's two percent of the tax to the treasury only upon his disbursement of the tax to the counties for the benefit of the political subdivisions entitled thereto.

■ Section 15 of Article IV and Section 33.080, relied upon by the attorney general, prescribe general rules for the handling of funds received for the state by its officials. The taxes here involved were not state taxes and were not subject to those provisions as such. Insofar as the state's two percent collection fee is concerned, the effect of § 146.110 and similar statutes was to declare that the state became entitled to its fee upon the distribution of the taxes to the counties and at that time such fee became payable to the state treasury.

That such is the meaning of § 146.-110 is evidenced by the 1969 amendment to the intangible tax law. Such subsequent legislation is properly considered in the interpretation of the language here in question. 73 Am.Jur.2d, Statutes, § 178, pp. 380–383 (1974).

The "Intangible Tax Fund" was created by the 1969 amendment. The director of revenue was required to deposit *all* funds received by him in payment of the intangible taxes in such fund on the first and fifteenth of each month. Moneys in the fund were to be invested as other idle state funds and the interest returned to each county in proportion to its share of the tax collected. § 146.052, RSMo Supp.1973, V.A.M.S. By the same enactment, § 146.110 was repealed and a new section enacted, requiring distribution of intangible tax collections to be made to the county treasury on or before December 15 of each year, "less two percent thereof which shall be retained by the state for collection * * *," the language previously used in § 146.110 insofar as the question here presented is concerned. The legislature, thus, required that all funds received by the director in payment of intangible taxes be deposited in the Intangible Tax Fund. This would include the two percent due the state, because that is a part of the funds received by the director of revenue. At the same time, the legislature reenacted, in the same language, the provision about deduction of the state's share. In view of the requirement for the deposit of all tax proceeds in the fund, the legislature, by the use of the same language as it had previously employed, recognized that such language had the meaning and effect of calling for the deduction of the state's share at the time of the distribution to the counties.

Furthermore, § 146.052 requires that all interest earned on the investment of the Intangible Tax Fund be returned to the counties, an acknowledgment that the fund is not reduced by the state's two percent until distribution of the fund is actually made. Otherwise the legislature would have provided for the state to share in the interest in proportion to its ultimate proportion of the fund.

This subsequent history confirms what a reading of § 146.110 by its terms provided during the years here in question.

§ 146.110 and § 33.080 can be construed harmoniously and both be given effect. § 146.110 determines when the state's right to the two percent fee accrues and § 33.080 governs when the fee, upon accrual, must be deposited in the state treasury. The state does not contend any dereliction occurred under the requirement of an annual deduction and deposit of the state's two percent share.

Since no cause of action could be stated against David, any claim against his surety and the banks necessarily fails. Therefore, the trial court did not err in sustaining the motions to dismiss.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the judges concur.